Sabino RABELLO, as the Personal Representative of the Estate of Junia Rabello, deceased, Plaintiff,

v.

BELL HELICOPTER TEXTRON, INC., a foreign corporation, and CAV–Air, Inc., a Florida corporation, Defendants.

Luiz Belculfine, Plaintiff,

v.

Bell Helicopter Textron, Inc., a foreign corporation, CAV–Air, Inc., a Florida corporation, Defendants.

Joao Veiga Negrao De Lima, as Personal Representative of the Estate of Joao Oscar Rooke Negrao De Lima, deceased, Plaintiff,

v.

Bell Helicopter Textron, Inc., a foreign corporation, CAV–Air, Inc., a Florida corporation, Defendants.

Nos. 00–00733–CIV, 00–00734–CIV, 00–1199–CIV.

United States District Court, S.D. Florida, Miami Division.

May 17, 2001.

Aaron S. Podhurst, Miami, FL, for Plaintiffs.

Francis Anania, Miami, FL, for Defendant Bell Helicopter Textron Inc.

Gregory M. Palmer, Fort Lauderdale, FL, for Defendant Cav–Air.

## *ORDER GRANTING SANCTIONS*

KING, District Judge.

THIS CAUSE comes before this Court upon Plaintiffs' Motion for Sanctions and Other Relief filed May 10, 2001.[1] Defendant Bell Helicopter Textron, Inc.'s ("Bell Helicopter" or "Defendant") filed a Response on May 14, 2001. Plaintiffs filed a Reply on May 15, 2001. The Court heard oral arguments on Plaintiffs' Motion on May 11, 2001.

### I. Background

On March 7, 2001, the Court set this case for trial commencing on April 16, 2001. (*See* Court's Order dated March 7, 2001.) Defendant Bell Helicopter moved to continue the trial. Defendant Bell Helicopter's Motion was granted and the trial was re-set for June 25, 2001. (*See* Court's Order dated March 26, 2001.) The Court Order dated March 26, 2001 set a Pre–Trial Conference for May 11, 2001 and mandated deadlines for filing all motions and completing all discovery. As is the Court's custom in all civil cases, the parties were warned in open court of the necessity to not be "caught napping" since these motion practices and discovery deadlines were literally "set in concrete" and would not be continued or extended again. Counsel were advised by the Court to imagine they were approaching a "brick wall" that would not be moved by continuance, even if counsel agreed and filed a joint motion.[2] In their Motion for Sanctions and Other Relief, Plaintiffs allege that Defendant Bell Helicopter violated Federal Rules of Civil Procedure 16 and 26 by failing to adequately and timely respond to discovery. Plaintiffs cite to numerous acts by Defendant Bell Helicopter as violating the discovery rules, such as failing to produce the accident report of the plane crash in dispute as requested, failing to accurately respond to discovery requests, delaying the deliver of relevant document, filing untimely witness lists, and meritless discovery objections. As a result, Plaintiffs now seek for the Court to sanction Defendant Bell

---

1. In the Court's Order dated May 14, 2001, it denied as untimely all of Defendant Bell Helicopter's Motions filed on May 10, 2001. (*See* Court's Order dated May 14, 2001.) Although Plaintiffs' Motion for Sanctions and Other Relief was also filed on May 10, 2001, the Court concluded that in fairness to Plaintiffs it must consider their instant Motion. At the Pre–Trial Conference, the Court heard arguments on Plaintiffs' Motion for Sanctions and Other Relief. Unlike Defendant Bell Helicopter's Motions, the events giving rise to Plaintiffs' Motion did not occur until after the deadline for filing all motions had past. More importantly, Plaintiffs could not anticipate that Defendant Bell Helicopter would produce documents requested over a year ago, a few days before the Pre–Trial Conference and after the deadline for filing motions to this Court. As the Court expressed in open court, it could not "fault the Plaintiffs for filing it [the instant Motion] three days or four days out of time. It should have been filed five days ago.... But, [the actions (late filing) complained of] they are of such recent origin that I think I am forced ... to consider it." (Trans. Pre–Trial Conference Hr'g at 67.) In fairness to the parties and to fully brief the issue given the severity of Plaintiffs' allegations, the Court set a briefing schedule in open court for Defendant Bell Helicopter to file a Response to Plaintiffs' Motion by Monday, May 14, 2001 and for Plaintiffs to file a Response by Tuesday, May 15, 2001 if they choose.

2. In relevant part, the Order dated March 26, 2001 states that:

> **TWENTY** days prior to PTC: ***ALL MOTIONS MUST BE FILED.*** Any outstanding motions will be ruled on at pretrial conference. **TWO** days prior to PTC: All responses to motions must be filed. **TEN** days prior to PTC: Attorneys must meet. **SEVEN** days prior to PTC: Resume of experts's reports must be exchanged. **FIVE** days prior to PTC: ***ALL DISCOVERY MUST BE COMPLETED.***

The Court notes that it ordered that all discovery be completed five (5) days before the May 11, 2001 Pre–Trial Conference. However, the parties entered their own agreement without the Court's approval to continue discovery beyond the deadline set by the Court.

Helicopter for their alleged violations of Federal Rules of Civil Procedure 16 and 26.

## II. Discussion

### 1. The "Lost" Accident Report of Bell's Lead Crash Investigator for this Accident

■ Perhaps the most egregious deliberate attempt to frustrate proper discovery in violation of the Federal Rules of Civil Procedure and the Orders of this Court involve the deposition of lead investigator, Jack Suttle.

Mr. Suttle, Defendant Bell Helicopter's lead investigator and designated representative to cooperate with the Brazilian authorities investigating the crash of Bell 407 helicopter on February 26, 1999 had been dispatched by Defendant Bell Helicopter, to the scene of the accident to determine the cause of the crash. In the performance of the discharge of his responsibility as Defendant Bell Helicopter's representative on the scene, he worked closely with the Brazilian authorities and was privy to the information gathered by those conducting the official investigation. He prepared an investigative report detailing the results of the investigation and his own analysis of the cause of the crash.

Although Plaintiffs' counsel had attempted to take the deposition of Mr. Suttle, and obviously important and significant witness, earlier in the discovery stage of this case [3], the deposition was unable to be scheduled until May 2, 2001 due to Mr. Suttle's "unavailability."

When Plaintiffs deposed Mr. Suttle on May 2, 2001 at Arlington, Texas, Mr. Suttle acknowledged that he had made a written report of his investigation. This report, and the lead investigator's report of accidents on four other Bell 407 helicopter crashes occurring around the world since the production of the Bell 407 had commenced, were demanded in Plaintiffs' notice to Defendant Bell Helicopter to produce.[4]

Pursuant to this demand for production of documents detailing incidents of tail rotor and tail boom contact involving the Bell 407. Defendant Bell Helicopter furnished (in approximately October 2000) *four accident investigation reports.* Mr. Suttle's accident report of the Bell 407 helicopter crash in Brazil of February 26, 1999 was not given to Plaintiffs.

Although four other reports of crashes of Bell 407 around the world were supplied, the most important and pertinent accident report, namely, the one involving the subject matter of this lawsuit of the crash occurring in Brazil, was not furnished to Plaintiffs.

Defendant Bell Helicopter's excuse for failing to provide this critical report to Plaintiffs when it was demanded a year ago is that it was inadvertently overlooked when the other four investigative reports were submitted and replied to the demand for production. Defendant Bell Helicopter's counsel (*see* Trans. Pre–Trial Conference Hr'g, May 11, 2001) submits that counsel were unaware until May 2, 2001 (the taking of Mr. Suttle's deposition) that he realized that the critical accident report of the plane crash in this controversy had not been produced to Plaintiffs. He admits that it was an oversight for it not to have been produced a year ago when demanded, and most certainly prior to the taking of Mr. Suttle's scheduled deposition on May 2, 2001, but that it was not until Mr. Suttle responded that "he had prepared an accident report" that he actually knew of the lost or misplaced report. It was not until 9:30 p.m. on the evening of May 2, 2001, after the deposition of Mr. Suttle had been completed, that Defendant Bell Helicopter's counsel knocked on the hotel room door of Plaintiffs' counsel and handed him Mr. Suttle's voluminous accident investigative report of this accident. Defense counsel had, apparently upon hearing Mr. Suttle's statement on his deposition direct examination that he in fact had written a report, conducted his own investigation and demanded of Mr. Sut-

---

**3.** The parties agreed during oral argument that Plaintiffs attempted to depose Mr. Suttle months before May 2, 2001. (*See* Trans. Pre–Trial Conference Hr'g, at 58,59,64.)

**4.** (*See* Pls.' Mot. for Sanctions, Attach. Ex. A, Request for Production to Bell dated March 16, 2001.)

tle a copy of the report, to be furnished to Plaintiffs' counsel at 9:30 p.m. that night.

In an effort to make amend for this violation of the Rules of Civil Procedure and the Court's Orders regarding discovery, defense counsel, to his credit, offered to make Mr. Suttle available on the following day for Plaintiff to again depose him regarding the accident report.

This offer was declined by Plaintiffs' counsel for the reason that it was impossible for him to conduct further oral examination the following day of Mr. Suttle without consultation with Plaintiffs' own experts after Plaintiffs' experts had an opportunity to study and digest Suttle's report.

During the argument on Plaintiffs' Motion for Sanctions, Defendant Bell Helicopter's counsel first took the position that the blame for failure to produce the missing report until the eve of cut-off of all discovery in this case had to be shared by Plaintiffs because they could have scheduled Mr. Suttle's deposition prior to May 2, 2001, and thus would have learned of the existence of a written report that had not been produced. Co-counsel for Defendant Bell Helicopter forthrightly brought to the Court's attention that this was a mistaken submission since Plaintiffs had endeavored to take Mr. Suttle's critical testimony earlier on in the discovery proceedings, but that Mr. Suttle had been "unavailable" for the taking of his deposition and that it had been continued by attorney agreement until the date when it was actually taken May 2, 2001.

Secondly, Defendant Bell Helicopter's counsel advanced the argument in opposition to the Motion for Sanctions that Plaintiffs' counsel should have assumed that Defendant Bell Helicopter would cause an extensive accident report to be compiled by one of its own employees and should have known when they received the accident reports from four other Bell 407 crashes that this critical investigative report was missing. (*See* Trans. Pre–Trial Conference Hr'g May 2, 2001). Plaintiffs' counsel responded that they, of course, suspected that Defendant Bell Heli-

copter was withholding a critical bit of evidence from Plaintiffs, but were reluctant to assert in a motion to compel production of such a document that one in fact existed, without knowing the truth or falsity of such an allegation. In other words, Plaintiffs could not move to produce a report that they suspected was being withheld until they had Mr. Suttle's sworn testimony that it either did or did not exist. Under these circumstances, the Court cannot accept the defense theory that the blame for this egregious violation is one that must be shared between the parties.

This Court finds that Defendant Bell Helicopter wilfully failed to produce Mr. Suttle's accident report to Plaintiffs. Based upon the record, the Court concludes that Defendant Bell Helicopter's failure to produce Mr. Suttle's accidental report was neither inadvertent nor innocent. Thus, Defendant Bell Helicopter's failure to produce the accident report was inexcusable. Further, the Court finds that Plaintiffs were harmed by Defendant Bell Helicopter's conduct. Plaintiffs were denied access to the accident report prepared by Defendant Bell Helicopter's key investigator relating to the plane crash until the end of discovery and after completion of his deposition. Plaintiffs were unprepared to depose Mr. Suttle, without consultation with experts, as well as other witnesses and were denied the full benefit of all relevant documents in preparation of their case for trial. As a result, Plaintiffs were unfairly disadvantaged in the instant litigation, mandating the granting of sanctions.

### 2. Late Delivery of Documents

On May 10 or 11, 2001, Defendant Bell Helicopter delivered to Plaintiffs thousands of pages of documents which were requested over a year ago by Plaintiffs. These documents include a CD–ROM with a testing simulation of the tail rotor strikes, a disc with numerous lengthy documents, and accidents reports by Canadian and Brazilian transportation agencies.[5] Plaintiffs requested all of these documents over a year ago on

---

5. The Court ordered all discovery documents furnished on the day before the Pre–Trial Conference delivered to the Clerk of this Court for safe keeping as Court's Exhibit 1 to the Pre–Trial Conference, with copies furnished to Plaintiffs. The exhibit consists of two large boxes.

March 16, 2000. Defendant Bell Helicopter argues that it did not delivery timely the documents because Defendant Bell Helicopter considered them "confidential" and Defendant Bell Helicopter wanted a confidentiality agreement between the parties before sharing the documents with Plaintiffs. Defendant Bell Helicopter asserts that prolonged negotiations over wording of the confidentiality agreement delayed delivery of the documents. In response, Plaintiffs assert that only a few of the documents produced on or after May 4, 2001 contained confidential information. Further, Plaintiffs assert that they offered six months ago to keep any alleged propriety information confidential until either a confidentiality agreement was reached or a court order entered on the matter.

The Court finds that Defendant Bell Helicopter's argument to be pretextual. Defendant Bell Helicopter's argument is simply a failed attempt at crafting a viable excuse for their failure to produce proper discovery until the eve of the Pre–Trial Conference and a month before trial. Defendant Bell Helicopter's actions indicate that it was not serious about the agreeing to a confidentiality agreement since they did not bring the dispute to the Court's attention, or ask the Court for permission not to furnish timely discovery until the agreement was reached. This Defendant Bell Helicopter did not do. Obviously, Plaintiffs had nothing to gain from delay in agreeing to a confidentiality agreement since they only wanted access to relevant information regarding their case. On the other hand, the confidentiality agreement was for Defendant Bell Helicopter's advantage; it protects Defendant Bell Helicopter's allegedly confidential documents from third parties.

Thus, the Court concludes that Defendant Bell Helicopter cannot justify its lengthy delay in producing the non-confidential documents to Plaintiffs on the grounds that the documents were confidential.

Defendant Bell Helicopter's actions have prejudiced the Plaintiffs by inundating them with thousand of pages of documents after all discovery is closed and a few weeks before trial. Plaintiffs have been denied the access to discoverable documents in a timely manner as proscribed by the Federal Rules of Civil Procedures and this Court Order. As a result, they have been severely limited in their ability to prepare and to try their case.

■ Plaintiffs also requested that Defendant Bell Helicopter provide them with the names of employees with knowledge of relevant liability issues. Specifically, Plaintiffs requested the names of employees with the "most knowledge of the tail boom". (Pls. Mot. Sanctions and Other Relief at 14.) Defendant Bell Helicopter offered James Braswell, as Defendant Bell Helicopter's employee with the most knowledge about the tail boom. James Braswell admitted during his deposition that he was not the best person to give information about the tail boom or even worked in that department. After his deposition, Defendant Bell Helicopter offered to produce other employees with presumably more knowledge about the tail boom, arguing that it was confused by Plaintiffs' request for witness with most knowledge.

The Court finds Defendant Bell Helicopter's explanation to be disingenuous given the circumstances of James Braswell's testimony. Defendant Bell Helicopter knew that its employee James Braswell did not have any relevant information regarding the accident. Defendant Bell Helicopter filed a witness list on May 7, 2001, at which included the names of employees who they now say have relevant knowledge about the tail boom. Defendant Bell Helicopter should have provided Plaintiffs with an accurate list of people with knowledge when this discovery was demanded, so that Plaintiffs could have conducted relevant discovery on the schedule set by this Court's orders.

### III. Conclusion

In light of the preceding discussion, the Court finds that Defendant Bell Helicopter's failure (a) to timely produce Mr. Shuttle's accident report, (b) to deliver of thousand of pages of non-propriety documents more than a year after their initial requests after discovery was closed, and (c) to accurately identify person(s) with actual knowledge of the relevant evidence warrants the granting of sanctions.

Generally, sanctions for discovery violations are appropriate unless the party subject to the sanctions can show that its violations "was either justified or harmless." *KW Plastics v. United States Can Co.*, 199 F.R.D. 687, 2000 WL 33249120 *4 (M.D.Ala.) citing *Klonoski v. Mahlab*, 156 F.3d 255, 269, (1st Cir.1998). The Court finds that Defendant Bell Helicopter has not presented any meritorious explanations to justify its willful violations of discovery rules. Moreover, the Court finds that Defendant Bell Helicopter's discovery violations were extremely harmful to Plaintiffs in preparing this case for trial.

The issue now before the Court is how can the wrong done to Plaintiffs by Defendant Bell Helicopter be remedied. The Court concludes it is appropriate to deny Defendant Bell Helicopter the use of all the documents produced as Court Exhibit 1., but permitting Plaintiffs to use any documents belatedly produced, the Defendant's witness listed by Defendant Bell Helicopter after the close of discovery cut-off are stricken and may not by called by Defendant.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiffs' Motion for Sanctions and Other Relief be, and the same is hereby, GRANTED. It is further

ORDERED and ADJUDGED that Plaintiffs shall have available to their use any or all documents found in Cts. Ex. No. 1 (Pretrial Conf. Hr'g) as they may be advised, in the presentation of Plaintiffs' case at trial. Defendant Bell Helicopter is precluded, for any purpose, from offering into evidence or otherwise using any document from among the thousands contained in Cts. Ex. No. 1. It is further

ORDERED and ADJUDGED that the following listed Defendant Bell Helicopter witness be, and they are hereby stricken and excluded from testifying for Defendant: Mark Winstanely, Gary Young, Eric Emblin, Dan Prairie, David Popelka, Robert Figueroa, Robert Fews, Joe Syslo, Brian Sanden, Greg Gust, Tom Wood, and Henry Armstrong. It is further

ORDERED and ADJUDGED that Mr. Vernon E. Albert, the expert witness for Defendant Bell Helicopter, whose expert resume was submitted to Plaintiffs in timely fashion in accordance with the Rules of Federal Procedure and the orders of this Court may, at the election of Defendant, be called to testify. Any other expert listed as a witness for Defendant whose resumes were not furnished in accordance with the rules of Court, shall be precluded from testifying at the trial of this case. Their names are hereby stricken from the list submitted at the Pre–Trial Conference of May 11, 2001. It is further

ORDERED and ADJUDGED that the Court reserves ruling on fees, costs and other expenses sustained by Plaintiffs in preparing their Motion for Sanctions and/or Other Relief. Trial of the above-styled cases shall commence June 25, 2001.